### COMPLICATIONS IN DISTRIBUTION OF AN ESTATE.

Common Pleas Court of Franklin County.

GEORGE S. MARSHALL, ADMINISTRATOR, V. MARGARET BASH ET AL.

Decided, April Term, 1915.

*Distribution—Course of Descent to Heirs of a Childless Couple—Apportionment of the Debts of Each of the Decedents Among Their Respective Heirs.*

Some years following the death of A, his wife (they were childless) died leaving personalty, some of which came to her through A, and also two pieces of real estate, both under mortgage, one of which she inherited from A and the other was bought by her after his death. Upon distribution, *Held:*

That the personalty not derived from the estate of the husband should be applied toward the payment of the debts of the wife; that from the proceeds from the sale of each piece of realty the mortgage thereon should be paid, and to the balances remaining should then be added the proceeds from the husband's personalty one-half to each; the remainder of the wife's debts will then be paid, the amount so required being taken from the two estates respectively, the heirs contributing thereto in proportion that the value of the property coming to them bears to the whole estate; the heirs of the wife will then take the remainder of the proceeds from the sale of her realty and one-half of the proceeds remaining from the sale of the husband's realty and one-half the proceeds from the husband's personalty and his heirs will take the remaining one-half of the husband's realty and one-half the proceeds from the husband's personalty.

*George S. Marshall,* for plaintiff.
*Jerry Dennis* and *John R. Horst,* for J. W. Ansel heirs.
*T. M. Sherman,* for Minerva Ansel heirs.

BIGGER, J.

The plaintiff, as administrator, and by motion, asks the court to marshal the assets of the estate for sale and payment of the debts of the estate.

It appears that the plaintiff is the administrator of the estate of Minerva Ansel, deceased; that she died seized of a residence property on Eleventh avenue and another residence property on Ninth avenue, and also possessed of certain personal property. It does not appear from what source the personal property came which she possessed at the time of her death, although it is stated by counsel representing the heirs of William Ansel, deceased, that this personal property all came from her deceased husband. It appears that her husband died intestate in 1907, and that the Eleventh avenue property came to her by descent from her deceased husband, together with certain personal property; that the Ninth avenue property came to her by purchase after the death of her husband. It is clear that under the statutes of this state governing descents and distribution, that this estate must be divided into two parts which pass in different lines of descent. (Section 8577, General Code.)

The real estate on Eleventh avenue which came to her by descent from her deceased husband goes, one-half to the brothers and sisters of the whole blood of her deceased husband or their representatives, and the other half to the brothers and sisters of Minerva Ansel of the half blood or their personal representatives, there being, it appears, no brothers and sisters or their representatives of the whole blood of Minerva Ansel. The same is true as to any personal property of which she may have died possessed which came to her directly from her deceased husband. The half blood of John W. Ansel will not inherit as there is a sister of the whole blood living, and representatives of another brother and sister of the whole blood (*Stembel* v. *Martin*, 50 O. S., 475). As I have indicated, it does not appear from what source her personal estate is derived. In so far as it came directly from her husband, it passes one-half to her brothers and sisters or their representatives, and one-half to the brothers and sisters of the whole blood of John W. Ansel or their repre-

sentatives. In so far as she possessed personal property which did not come directly from her husband, as for example rents derived from her real estate or other personal property which she might have acquired by purchase after the decease of her husband, such personal property would pass to her heirs, in this case to her sister of the half blood and the representatives of another sister. So much for the course of descent.

Coming then to the question of the payment of the debts of the estate. In the first place, I am of opinion that the parties who take the two pieces of real estate take it *cum onore* as to the mortgages existing upon these two pieces of real estate. Where lands of a decedent descend subject to a mortgage created by the decedent, his personal estate is primarily liable for the discharge of the lien and the heirs are entitled to have the property exonerated from the lien by application of the personal estate to its payment. But in this case, as I understand it, the personal property possessed by her will not pay all of the other debts that are unsecured and that after the application of her personal property to the payment of the other debts of the estate, there will be still a considerable amount of indebtedness which will have to be paid from the proceeds of the real estate. All of the personal property, except that which can be directly traced to her husband, should be applied first to the payment of the general debts of her estate. The balance of the indebtedness must be paid from the proceeds of the sale of the real estate and the specific personalty which came by descent from her husband. The two pieces of real estate should be sold, as well as the personal property. From the proceeds of the sale of the Eleventh avenue property the mortgage on that property should be paid. From the proceeds of the sale of the Ninth avenue property the mortgage on that property should be paid. The balance remaining after deducting the mortgage from the selling price of the Ninth avenue property will go to her half sisters and the representatives of the deceased half sister. The balance remaining after deducting the mortgage from the selling price of the Eleventh avenue property will go, one-half to her half sister and the representatives of the deceased half sister, and the other

half will go to the full sister of John W. Ansel and the representatives of the deceased full brother and sister *per stirpes.* The personalty which came to her directly from her husband should be divided into two equal parts, one-half going to the half sister of Minerva Ansel and the representatives of the deceased half sister, and the other half to the full sister of John W. Ansel and the representatives of the deceased full brother and sister *per stirpes.* After the application to the payment of the debts of her estate, exclusive of the mortgage debts, of whatever personal property she possessed at her death, except that which came directly from her husband, the remaining portion of the debt will be paid out of the property going to the sister of John W. Ansel and the representatives of the deceased full brother and sister and the property going to the half sister of Minerva Ansel and the representatives of the deceased half sister, in proportion to the value of the assets of the estates respectively, thus passing in different line of descent. In other words, add together the balance of the selling price of the Ninth avenue property after satisfaction of the mortgage and the half of the selling price of the Eleventh avenue property after deducting the mortgage, and one-half of the selling price of the personal property coming directly from John W. Ansel, and this will be the estate passing to the half sister and representatives of the deceased half sister of Minerva W. Ansel. Add together one-half of the selling price of the Eleventh avenue property after deducting the mortgage, and one-half of the proceeds from the sale of the personal property coming directly from John W. Ansel, and this will be the estate passing to the sister of the full blood and representatives of the brother and sister of the full blood of John W. Ansel. The debt remaining after application of her personal estate will be paid out of these two estates in proportion to their value or amount, and distribution made to those entitled.

Counsel for the heirs of John W. Ansel say that they have been unable to find any specific authority for the marshaling of such an estate as this, and I have been unable to find any, but upon principle this is in my opinion the proper method of

marshaling the assets and paying the debts of this estate. I can not agree with counsel for the heirs of John W. Ansel in their contention that the Ninth avenue property must be applied to the satisfaction of the entire indebtedness of the estate. The heirs of John W. Ansel have no equities, in my opinion, superior to those of the heirs of Minerva Ansel. The property all belonged to her during her life absolutely, and was subject to disposal by her in any manner that she saw fit. Those who dealt with her and extended credit to her had as much right to rely upon her ownership of the Eleventh avenue property as upon her ownership of the Ninth avenue property. As the law formerly stood, it would all have descended to her heirs to the exclusion of the heirs of John W. Ansel. The only effect of the statute was to pass one-half of such property to the heirs of John W. Ansel and one-half to her heirs, where before, the entire property would have passed to her heirs. But they have no equities on that account superior to her heirs. This was the conclusion arrived at by Judge Ferris in a case reported in 7th N. P. at page 185, holding that in such a case as this the brothers and sisters of the deceased husband must contribute to the payment of the debts of her estate in proportion to the value which the property coming to them bears to the whole estate.